UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAF BRIDGE BORROWER GS, LLC, | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| MENASHE GRUNFELD, ABRAHAM SCHREIBER, MATISYOHU HERZKA, and AKIVA KRANZ, | |
| Defendants. | |

Plaintiff CAF Bridge Borrower GS, LLC ("Plaintiff" or "Lender"), by and through its attorneys, Holland & Knight LLP, as and for its complaint (the "Complaint") against defendants Menashe Grunfeld ("Grunfeld"), Abraham Schreiber ("Schreiber"), Matisyohu Herzka ("Herzka") and Akiva Kranz ("Kranz" together with Grunfeld, Schreiber, and Herzka, collectively, "Guarantors" or "Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action seeking damages arising out of Guarantors' breaches of multiple provisions of their two separate Guarantees, as defined herein, executed in connection with a $24,000,000.00 loan (the "Loan") to WKK Shreveport LLC ("Borrower"), which was secured by a large multi-family construction project in Shreveport, Louisiana known as the Jolie Apartments (defined below as the "Property").

2.      As discussed in detail below, not only did Borrower and Guarantors fail to repay the Loan, fail to complete the renovation work required under the Loan, and permit numerous liens and judgments to be docketed against the Property, but also, Borrower and Guarantors willfully abandoned the Property, which resulted in waste and caused significant deterioration of the Property, resulting in numerous life and safety concerns including multiple fires and criminal

activity at the Property, the shutting off of utilities, and an emergency declaration being issued by the mayor of Shreveport relating to the Property.

3.      As a result, Guarantors are in breach of the Guarantees due to their failure to pay and perform the Guaranteed Obligations.

## THE PARTIES, JURISDICTION AND VENUE

4.      Plaintiff is a Delaware limited liability company, whose sole member is Redwood BPL Holdings 2, Inc., a Delaware corporation that maintains its principal place of business in California.  As such, Plaintiff is a citizen of the States of Delaware and California.

5.      Upon information and belief, Grunfeld is a natural person domiciled in New Jersey and residing at 175 Melville Avenue, Lakewood, New Jersey 08701, and, thus, is a citizen of the state of New Jersey.

6.      Upon information and belief, Schreiber is a natural person domiciled in New Jersey and residing at 1454 Canterbury Road, Lakewood, New Jersey 08701, and, thus, is a citizen of the state of New Jersey.

7.      Upon information and belief, Herzka is a natural person domiciled in New Jersey and residing at 922 Madison Avenue, Lakewood, New Jersey 08701, and, thus, is a citizen of the state of New Jersey.

8.      Upon information and belief, Kranz is a natural person domiciled in New Jersey and residing at 1536 Laguna Lane, Lakewood, New Jersey 08701, and, thus, is a citizen of the state of New Jersey.

9.      Based on the foregoing, this Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Guarantors and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     Section 5.3(b) of the Guarantees further provides, in relevant part, that:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST
> LENDER OR GUARANTOR ARISING OUT OF OR RELATING
> TO THIS GUARANTY MAY BE INSTITUTED IN ANY
> FEDERAL OR STATE COURT IN NEW YORK, NEW YORK.
> LENDER, BY ITS ACCEPTANCE HEREOF, AND
> GUARANTOR HEREBY (i) IRREVOCABLY WAIVE, TO THE
> FULLEST EXTENT PERMITTED BY APPLICABLE LAW,
> ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER
> HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT,
> ACTION OR PROCEEDING BROUGHT IN SUCH A COURT
> AND ANY CLAIM THAT ANY SUCH PROCEEDING
> BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN
> INCONVENIENT FORUM, (ii) IRREVOCABLY SUBMIT TO
> THE JURISDICTION OF ANY SUCH COURT IN ANY SUCH
> SUIT, ACTION OR PROCEEDING, …

11.     In light of the forgoing, Defendants consented to this Court's personal jurisdiction over them in connection with the matters at issue herein and the laying of venue before this Court.

12.     Pursuant to Section 5.11 of the Springing Recourse Guaranty, as defined herein, and Section 5.14 of the Completion Guaranty, as defined herein, the parties waived their right to a trial by jury.

## ALLEGATIONS COMMON TO ALL CLAIMS

### I.    Borrower and Guarantors Induce Plaintiff to Make the $24 Million Loan

#### A.    The Loan Documents

13.     On May 5, 2022, CoreVest American Finance Lender LLC ("Original Lender"), Plaintiff's predecessor-in-interest, agreed to make Borrower a loan in the original principal amount of $24,000,000.00 (previously defined herein as the "Loan").

14.     The Loan was evidenced by that certain Loan Agreement, dated as of May 5, 2022, by and between Original Lender and Borrower (the "Loan Agreement"), a true and correct copy of which is annexed hereto as **Exhibit 1**.

15.     The Loan was further evidenced by that certain Secured Promissory Note, dated May 5, 2022, in the original principal amount of $24,000,000.00 executed by Borrower in favor of Original Lender (the "Note"), a true and correct copy of which is annexed hereto as **Exhibit 2**.

16.     The Loan is secured by that certain Multiple Indebtedness Mortgage, Pledge of Leases and Rents and Security Agreement (the "Mortgage"), executed by Borrower in favor of Original Lender, dated as of May 5, 2022 and recorded in the official records of the Clerk of Court of Caddo Parish, Louisiana (the "Clerk") on May 16, 2022 as Entry No. 2885557.  A true and correct copy of the Mortgage is annexed hereto as **Exhibit 3**.

17.      Pursuant to the Mortgage, Borrower granted Original Lender, and its successors and assigns, a security interest in that certain real property and the improvements thereon known as the Jolie Apartments and located at 1017 Quail Creek Road, Shreveport, Louisiana, as more fully described in the Mortgage (the "Property").

18.     There is a residential apartment complex located on the Property which originally consisted of 403 apartment units.

19.     Section 1.01(h) of the Mortgage also included Borrower's assignment and pledge of all leases, rents, proceeds of the same, and all of Borrower's right, title and interest in all lease guaranties, and other supporting documents related to the Property as more fully described within the Mortgage which further secures the Borrower's obligations under the Note and Loan Agreement.

20.     Additionally, within Section 1.01(m) of Mortgage, Borrower granted Original Lender a continuing security interest in all of Borrower's rights and interests under any and all "agreements, contracts, certificates, instruments, franchises, management agreements, permits, licenses, all architectural, design and engineering drawings, plans, specifications and other

4

documents" respecting or pertaining to "the use, occupation, construction, management, or operation" of the Property, (collectively, the "Material Contracts").

**B. Guarantors Guarantee Borrower's Obligations Under the Loan**

21.     In order to induce Original Lender to extend the Loan and to further secure its repayment, the Guarantors executed that certain Guaranty, dated as of May 5, 2022, wherein Guarantors jointly and severally, irrevocably and unconditionally guaranteed the payment and performance of certain Guaranteed Obligations, as defined therein, as and when the same shall be due and payable (the "Springing Recourse Guaranty"). A true and correct copy of the Springing Recourse Guaranty is annexed hereto as **Exhibit 4**.

22.     In order to further induce Original Lender to extend the Loan and to further secure its repayment, Guarantors executed that certain Completion Guaranty, dated as of May 5, 2022, wherein Guarantors irrevocably and absolutely guaranteed the payment and performance of certain Guaranteed Obligations, as defined therein, which includes, but is not limited to, the completion of the Renovation Work (as defined in the Loan Agreement) in accordance with the Construction Documents (as defined in the Loan Agreement) and otherwise in accordance with the provisions of the Loan Agreement, as and when the same shall be due and payable (the "Completion Guaranty" and together with the Springing Recourse Guaranty, collectively, the "Guarantees"). A true and correct copy of the Completion Guaranty is annexed hereto as **Exhibit 5**.

**C. Revenues of the Property Are Pledged to Plaintiff**

23.     Pursuant to Section 12.6 of the Loan Agreement, Borrower was required to create and "thereafter maintain with the Rent Deposit Bank an Eligible Account into which Borrower will deposit or cause to be deposited all Revenues from the Property (the 'Rent Deposit Account')."

24.     Pursuant to that certain Deposit Account Control Agreement, dated as of May 4, 2022, executed by and among Signature Bank, Borrower and Original Lender (the "DACA"),

Borrower granted Original Lender a security interest in all sums on deposit in or payable to or withdrawable from the Rent Deposit Account.

25.     The Loan Agreement, Note, Mortgage, Guarantees, and DACA, together with all other documents or agreements executed in connection with or evidencing the Loan are collectively referred to herein as the "Loan Documents."

**D.   Assignment of the Loan Documents**

26.     On or about May 5, 2022, Original Lender assigned the Loan Documents, including the Note and Mortgage, to Redwood BPL Holdings 2, Inc. ("Redwood").

27.     In connection with the assignment to Redwood, Original Lender executed and delivered to Redwood the following documents:

a.   that certain Allonge executed by Original Lender in favor of Redwood, a true and correct copy of which is annexed hereto together with the Note as Exhibit 2;

b.   that certain Assignment of Security Instrument, dated as of May 5, 2022 and recorded with the Clerk on November 28, 2022 as Instrument # 2910920, a true and correct copy of which is annexed hereto as **Exhibit 6**;

c.   That certain Omnibus Assignment of Loan Documents dated as of May 5, 2022, a true and correct copy of which is annexed hereto as **Exhibit 7**.

28.     On or about May 5, 2022, Redwood assigned the Loan Documents, including the Note and Mortgage, to Plaintiff.

29.     In connection with the assignment to Plaintiff, Redwood executed and delivered to Plaintiff the following documents:

a.   that certain Allonge executed by Redwood in favor of Plaintiff, a true and correct copy of which is annexed hereto together with the Note as Exhibit 2;

b.   that certain Assignment of Security Instrument, dated as of May 5, 2022 and recorded with the Clerk on November 28, 2022 as Instrument # 2910922, a true and correct copy of which is annexed hereto as **Exhibit 8**;

c.   That certain Omnibus Assignment of Loan Documents dated as of May 5, 2022, a true and correct copy of which is annexed hereto as **Exhibit 7**.

30.     Pursuant to the forgoing, Plaintiff is the current owner, assignee and holder, as lender, of the Loan Documents, including the Note and Mortgage, and is in physical possession of the Loan Documents.

31.     Pursuant to Section 5.6 of the Completion Guaranty and Section 5.13 of the Springing Recourse Guaranty, the Guarantees "inure to the benefit of and be enforceable by Lender and its successors and assigns.  Lender may assign or otherwise transfer all or any portion of its rights and obligations under this Agreement in connection with any assignment of the Loan and the Loan Documents, and any assignee or transferee shall be entitled to all the benefits afforded to Lender under [the Guarantees]."

32.     Section 9.1 of the Loan Agreement likewise provides that "[t]he provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby."

33.     Section 9.2 of the Loan Agreement further provides:

> [t]he Loan, the Note, the Loan Documents, any individual Advance separate from other Advances, and/or Lender's rights, title, obligations and interests therein may be sold, assigned, participated, pledged or otherwise transferred by Lender and any of its successors and assigns to any Person at any time in its sole and absolute discretion, in whole or in part, whether by operation of law (pursuant to a merger or other successor in interest) or otherwise without notice to or consent from any Restricted Party or any other Person and without any other restriction of any kind.

**E.  Borrower's Payment Default**

34.     Pursuant to Section 2.5.2 of the Loan Agreement, Borrower was obligated to make a monthly payment of principal and interest equal to the Monthly Debt Service Payment, as defined in the Loan Agreement, on the designated Monthly Payment Date, defined as the 1st day of each calendar month.

35.     Section 8.1.1 of the Loan Agreement provides, in relevant part, that an Event of Default shall occur if Borrower fails to pay "when due of any principal or interest owing" under [the Loan Agreement] or Note."

36.     Borrower failed to make the required Monthly Debt Service Payment on the September 1, 2023 Payment Date and each Monthly Payment Date thereafter.

37.     Borrower's failure to make the required Monthly Debt Service Payments constituted an Event of Default (the "Monthly Payment Default").

38.     Plaintiff, through its counsel, advised Borrower and Guarantors of, *inter alia*, the Monthly Payment Default, in writing, pursuant to the Demand Letter dated November 9, 2023 (the "November 2023 Demand Letter").  A true and correct copy of the November 2023 Demand Letter is annexed hereto as **Exhibit 9**.

39.     Pursuant to Sections 12.1 and 12.2 of the Loan Agreement, Borrower was required to make monthly deposits for the Tax Reserve and Insurance Reserve, as defined in the Loan Agreement, respectively.

40.      Section 8.1.2 of the Loan Agreement provides, in relevant part, that an Event of Default shall occur if Borrower fails to pay "when due of any deposit required to be made to any Reserve."

41.     After obtaining the Loan, Borrower failed to make the required monthly deposits for the Tax Reserve and Insurance Reserve.

42.     Borrower's failure to pay the required monthly reserve deposits constituted another Event of Default (the "Reserve Payment Default").

**F.   Plaintiff's Foreclosure Action**

43.     On or about June 7, 2024, Plaintiff commenced an action to foreclose the Mortgage in the Louisiana 1st Judicial District, Parish of Caddo (the "Foreclosure Court"), with the caption

*CAF Bridge Borrower GS LLC v. WKK Shreveport LLC*, and Suit Number 650,920 (the "Foreclosure Action").

44.     On or about June 11, 2024, the Foreclosure Court entered an Order Granting Writ of Sequestration and Appointment of Keeper (the "Order of Appointment") for the Property, which, among other things appointed Trigild Property Management, LLC, through its representative, Chris Neilson, as Keeper of the Property (the "Keeper"). A true and correct copy of the Order of Appointment is annexed hereto as **Exhibit 10**.

45.     On or about October 21, 2024, the Foreclosure Court entered judgment by default (the "Default Judgment") against the Borrower in the amount of $26,314,932.85 (the "Debt Amount") in the Foreclosure Action. A true and correct copy of the Default Judgment is annexed hereto as **Exhibit 11**.

46.     In accordance with the Default Judgment and pursuant to a writ of *fieri facias*, a foreclosure sale of the Property was scheduled for February 19, 2025.

47.     On or about February 6, 2025, Borrower filed with the Foreclosure Court a Verified Petition to Annul Default Judgment, for Injunctive Relief Enjoining Judicial Sale, and for Damages and an Emergency Motion for Preliminary Injunction and, Alternatively, Temporary Restraining Order Enjoining Judicial Sale (the "Foreclosure Stay Motion"), asserting that Borrower was not served with process, that the Default Judgment is null due to lack of service of process, and that the foreclosure sale should be enjoined.

48.     As of the date of this Complaint, the Foreclosure Stay Motion is pending before the Foreclosure Court.

49.     Notwithstanding the Foreclosure Stay Motion, the Debt Amount, plus interest, costs, and fees, remains unpaid, due, and owing to Plaintiff.

II.     **Guarantors Breach the Springing Recourse Guaranty.**

A.     **Misapplication of Funds**

50.     Pursuant to Section 12.6 of the Loan Agreement, Borrower was obligated to deposit all Revenue, as defined in the Loan Agreement, from the Property directly into the Rent Deposit Account.

51.     Pursuant to Section 1.2(a)(v) of the Springing Recourse Guaranty, Guarantors are liable for any loss, damage, cost, expense, liability, claim or other obligation (collectively, "Losses") arising out of or in connection with the "misapplication, misappropriation or conversion of. . . funds or payments attributable to the Property."

52.     Upon information and belief, Borrower and Guarantors failed to deposit all Revenue into the Rent Deposit Account and/or otherwise misapplied funds or payments attributable to the Property (the "Misapplication Default").

53.     Plaintiff has suffered Losses as a result of the Misapplication Default.

54.     Pursuant to Section 1.2(a)(x) of the Springing Recourse Guaranty, Guarantors are liable for Losses arising out of or in connection with "the failure to use any Advance proceeds in accordance with the Loan Agreement and other Loan Documents."

55.     Upon information and belief, Borrower failed to use Advance proceeds in accordance with the Loan Agreement and Loan Documents (the "Misuse of Advance Default").

56.     Plaintiff has suffered Losses as a result of such breaches as a result of the Misuse of Advance Default.

57.     Pursuant to Section 1.2(a)(xii) of the Springing Recourse Guaranty, Guarantors are liable for Losses arising out of or in connection with "Borrower's failure to apply proceeds of Rents or any other payments in respect of the Leases and other Revenues to the costs of

maintenance and operation of the Property, the payment of Taxes, lien claims, Insurance Premiums, debt service and other amounts due under the Loan Documents."

58.    Upon information and belief, Borrower failed to apply proceeds of Rents and other Revenues as required by the Loan Documents ("Misuse of Revenues Default").

59.    Plaintiff has suffered Losses as a result of such breaches as a result of the Misuse of Revenues Default.

60.    As such, Guarantors are liable to Plaintiff under the Springing Recourse Guarantor for all such Losses.

**B.  Failure to Pay Liens, Taxes and Impositions**

61.    Pursuant to Section 6.1.6(a) of the Loan Agreement, Borrower covenanted and agreed to "promptly discharge or cause to be discharged (i) any mechanic's or materialmen's liens or claims of lien filed or otherwise asserted against the Property."

62.    Pursuant to Section 6.1.7 of the Loan Agreement, Borrower covenanted and agreed to "not grant or permit, and shall promptly pay and discharge, at Borrower's sole cost and expense, all Liens and claims thereof on the Property or any part thereof or interest therein other than the Liens in favor of Lender."

63.    In violation of the Loan Documents, at least four (4) liens and three (3) judgments, in the aggregate amount of $214,022.72, have been recorded as liens against the Property as described below (the "Liens"):

| Lienor | Principal Amount | Date Recorded | Recordation Information |
|--------|-----------------|---------------|------------------------|
| Geaux Pro Service & Restoration, LLC | $21,236.20 | September 8, 2022 (Lien) | Instrument # 2902248 |
| Impact Floors of TX,LLC | $119,543.39 | November 18, 2022 (Lien) | Instrument # 2910348 |
| Proper Care Maintenance LLC | $29,625.00 | November 30, 2022 (Lien) | Instrument # 2911336 |

| | | | |
|---|---|---|---|
| Bobby L. Greene Plumbing & Heating, LLC | $4,548.09 | September 6, 2023 (Judgment) | Instrument #2942744 |
| Lane Mays Plumbing LLC | $7,523.00 | April 11, 2024 (Lien) | Instrument # 2963788 |
| KB Electric, LLC | $4,594.04 | April 18, 2024 (Judgment) | Instrument # 2964473 |
| City of Shreveport – Department of Water & Sewage | $26,953.00 | September 5, 2024 (Judgment) | Instrument # 2983022 |
| **Total:** | **$214,022.72** | | |

64.      Pursuant to Section 1.2(a)(vii) of the Springing Recourse Guaranty, Guarantors are liable for all Losses arising out of or in connection with "the failure to pay charges for labor or materials or other charges that can create Liens on any portion of the Property."

65.      Borrower and Guarantors failed to pay, remove, and discharge the Liens (the "Lien Defaults").

66.      Plaintiff has suffered Losses as a result of the Lien Defaults.

67.      Pursuant to Section 1.2(a)(viii) of the Springing Recourse Guaranty, Guarantors are liable for all Losses arising out of or in connection with "the failure to pay Taxes or other Impositions."

68.      Borrower and Guarantors failed to pay all Taxes and other Impositions (the "Tax Defaults").

69.      Plaintiff has suffered Losses as a result of the Tax Defaults.

70.      As such, Guarantors are liable to Plaintiff under the Springing Recourse Guarantor for all such Losses.

C. **Failure to Complete the Renovation Work.**

71.    Section 1.2(a)(xiv) of the Springing Recourse Guaranty provides that Guarantors are liable for any Losses arising out of or in connection with "Borrower's failure to Complete the Renovation Work in the time and manner and otherwise in accordance with the terms and conditions of the Loan Agreement."

72.    As defined in the Loan Agreement, "Renovation Work" means "all work to be performed in connection with the renovation and repair of the Property in accordance with the Statement of Proposed Renovations, the Plans, the Renovation Budget and [the Loan] Agreement."

73.    Pursuant to the Loan Agreement, "Statement of Proposed Renovations" means "the detailed description of the proposed Renovation Work attached [to the Loan Agreement] as Exhibit A prepared by Borrower and approved by Lender, and which may be included as part of the Renovation Budget."

74.    As defined in the Loan Agreement, "Renovation Budget" means "the budget attached [to the Loan Agreement] as Exhibit A prepared by Borrower, itemizing all hard and soft costs necessary to Complete the Renovation Work, and approved by Lender."

75.    As defined in the Loan Agreement, "Completion", "Complete" or "Completed" means "that, in Lender's sole judgment: (a) the Renovation Work has been completed in a good and proper manner, free and clear of all defects, mechanics and other liens in accordance with: (i) the Statement of Proposed Renovations and Plans approved by Lender, together with any changes thereto approved by Lender, in its sole discretion; (ii) the Renovation Budget approved by Lender, without substantial deviation, unless approved by Lender, in its sole discretion and (iii) all Legal Requirements; (b) issuance of permanent certificates of occupancy (or reasonable equivalent) by the applicable governmental authority for each Residential Unit and any other Improvements for which a certificate of occupancy is required, or if a certificate of occupancy is not required for the

13

Renovation Work, evidence that the Renovation Work has been completed in accordance with all Legal Requirements; (c) all notices of completion with respect to the Improvements, as renovated by the Renovation Work, will have been filed and all statutory lien periods will have expired; (d) all costs of completing the Renovation Work shall have been paid, including, without limitation, interest due and owing on the Principal Indebtedness prior to the Outside Completion Date; and (e) all of the conditions for the final Advance set forth in Section 4.3 hereof have been satisfied."

76.     Borrower failed to perform the Renovation Work without undue delay and Borrower failed to Complete the Renovation Work (the "Renovation Work Default").

77.     Plaintiff has suffered Losses as a result of the Renovation Work Default.

78.     As such, Guarantors are liable for all Losses relating to the Renovation Work Default.

**D.  <u>Waste, Destruction and Damage of the Property</u>**

79.     Pursuant to Section 1.2(a)(ii) of the Springing Recourse Guaranty, the Guarantors are liable for Losses arising out of or in connection with the "wrongful removal or destruction of the Property, or any portion thereof, or damage to the Property, or any portion thereof caused by willful misconduct or gross negligence of a Designated Party."

80.     As defined in Section 1.2(a) of Springing Recourse Guaranty, a "Designated Party" is any Restricted Party or any Affiliate of any Restricted Party or agent or representative of any Restricted Party or any Affiliate of any Restricted Party.

81.     As defined in the Loan Agreement, a Restricted Party is "Borrower and the other Loan Parties, and any partner, member, shareholder, non-member manager, and any other direct or indirect legal or beneficial owner of Borrower…"

82.     Pursuant to Section 1.2(a)(iii) of the Springing Recourse Guaranty, the Guarantors are liable for Losses arising out of or in connection with "any Waste of the Property, or any portion thereof."

83.     As defined in the Loan Agreement, "Waste" means "any material abuse or destructive use (whether by action or inaction) of the Property."

84.     Upon information and belief, Designated Parties allowed the Property to fall into such disrepair that unsafe conditions and criminal activity have occurred at the Property, including multiple shootings and acts of arson.

85.     Upon information and belief, local publications reported on the numerous unsafe conditions and criminal activity during the month of May 2024.

86.     Upon information and belief, Designated Parties did not pay the utilities for water and electricity, which caused the utilities at the Property to be turned off.

87.     Upon information and belief, Designated Parties urged residents to vacate their units.

88.     Upon information and belief, on or about May 8, 2024, Borrower and Manager notified the residents of the Property that the utilities would be cut off and Manager's staff would no longer be at the Property.

89.     Upon information and belief, Designated Parties caused, by action or inaction, the Property to become uninhabitable.

90.     Upon information and belief, tenants of the Property left their units at the Property due to the utilities being shut off.

91.     Upon information and belief, squatters occupied the Property which caused damage to the Property.

92.     Upon information and belief, Designated Parties failed to remove squatters from the Property and failed to maintain the Property in a safe and habitable condition.

93.     Upon information and belief, on or about May 18, 2024, a shooting and a homicide took place at the Property.

94.     Upon information and belief, on or about May 26, 2024, an act of arson took place at the Property that caused signification damage to the Property.

95.     Upon information and belief, on or about May 28, 2024, a second act of arson took place at the Property that caused additional damage to the Property.

96.     The acts and omissions of Designated Parties have caused the Property to be in an unsafe condition and constitute Waste of the Property and damage and destruction to the Property (the "Waste Default", and together with the Misapplication Default, Misuse of Advance Default, Misuse of Revenue Default, Lien Defaults, Tax Defaults, and Renovation Work Default, collectively, the "Springing Recourse Guaranty Defaults").

97.     Plaintiff has suffered Losses as a result of the Waste Default.

98.     Guarantors are liable for all Losses relating to the Waste Default.

**E. Full Recourse Liability for Willful Misconduct.**

99.     Pursuant to Section 1.2(b)(xi) of the Springing Recourse Guaranty, Guarantors are liable for the entire amount of the Indebtedness upon the occurrence of "fraud, willful misconduct, intentional misrepresentation or intentional failure to disclose a material fact by or on behalf of a Designated Party."

100.    Upon information and belief, Designated Parties have committed willful misconduct by, among other things, willfully abandoning the Property and permitting the unsafe conditions that lead to crime, arson, and destruction of the Property.

101.    Upon information and belief, Designated Parties intentionally misrepresented and intentionally failed to disclose to Plaintiff numerous material facts relating to the Property.

102.    Upon information and belief, Designated Parties intentionally misrepresented to Plaintiff that adequate insurance was in place for the Property, but the Property was underinsured.

103.    As such, Guarantors are liable for the entire Indebtedness due to the willful misconduct and misrepresentations of Designated Parties.

104.    By letter dated January 13, 2025, Plaintiff, through its counsel, provided written notice to Guarantors that they are liable for the entire Indebtedness pursuant to Section 1.2(b)(xi) Springing Recourse Guaranty and that Guarantors are liable for Plaintiff's Losses as a result of the Spring Recourse Guaranty Defaults (the "2025 Guarantor Default Letter").   A true and correct copy of the 2025 Guarantor Default Letter is annexed hereto as **Exhibit 12**.

105.    The 2025 Guarantor Default Letter also made demand to Guarantors to pay Plaintiff the entire amount of the Debt Amount, with interest and expenses in accordance with the Springing Recourse Guaranty, and all Losses together with all costs and out-of-pocket expenses (including court costs and attorneys' fees, disbursements, costs and expenses) incurred by Plaintiff.  *See* Ex. 12, p. 3.

106.    As of the date of this Complaint, Guarantors have failed to make any payment to Plaintiff under the Springing Recourse Guaranty.

**III.**    **Guarantors Breached the Completion Guaranty**

107.    The Completion Guaranty establishes the unconditional, irrevocable and absolute obligations of Guarantor to, *inter alia*, complete and/or pay for the lien-free completion of the Property, and to indemnify Plaintiff for and from all costs and losses arising out of the Renovation Work (as defined in the Loan Agreement).

108.    Pursuant to Section 1.1(a)(i) of the Completion Guaranty, Guarantors guaranteed that Borrower "shall construct and Complete the Renovation Work in accordance with any and all Plans, the Work and Payment Schedule, the Renovation Budget, all Legal Requirements and otherwise in accordance with the provisions of the Loan Agreement and shall pay all costs and expenses (including, without limitation, all hard costs and soft costs) incurred in connection therewith."

109.    Pursuant to Section 1.1(a)(ii) of the Completion Guaranty, Guarantors guaranteed to keep the Property "free and clear of all Liens (other than the Permitted Exceptions" arising from or incurred in connection with the construction and Completion of the Renovation Work."

110.    Pursuant to Section 1.1(b) of the Completion Guaranty, Guarantors guaranteed the payment to Plaintiff, or reimbursement of Plaintiff for, all costs and expenses required under Section 1.11 of the Completion Guaranty.

111.    Pursuant to Section 1.11 of the Completion Guaranty, Guarantors agreed that they would be liable for "any and all costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement of this Guaranty."

112.    Accordingly, Guarantors are also liable under the Completion Guaranty for all amounts due under the Completion Guaranty, together with all of Plaintiff's costs and expenses, including court costs and attorneys' fees (collectively, the "Completion Guaranty Default", and together with Springing Recourse Guaranty Defaults, collectively, the "Defaults").

113.    Section 1.6 of the Completion Guaranty provides that Guarantors' obligations are "irrevocable, absolute, and continuing."

114.    Section 1.6 of the Completion Guaranty further provides that the Completion Guaranty "may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note."

115.    Section 1.4 of the Completion Guaranty provides that a "Guarantor Event of Default" occurs if Guarantors fail within ten (10) Business Days after written notice from Plaintiff to promptly perform the Guaranteed Obligations under the Completion Guaranty.

116.    By letter dated February 2, 2024, Plaintiff, through its Louisiana counsel of Hinshaw and Culbertson LLP, provided written notice to Guarantors, through their counsel, pursuant to Section 1.4 of the Completion Guaranty (the "2024 Guarantor Default Letter").  A true and correct copy of the Guarantor Default Letter is annexed hereto as **Exhibit 13**.

117.    The 2024 Guarantor Default Letter notified Guarantors of their obligations under the Completion Guaranty, specifically the obligation to pay to Plaintiff the amount of any actual loss or damage incurred by Plaintiff as a result of any delay in the Completion of the Renovation Work. *See* Ex. 13, p. 2.

118.    The 2025 Guarantor Default Letter also provided an additional written notice to Guarantors pursuant to Section 1.4 of the Completion Guaranty and made demand for Guarantors to promptly perform the Guaranteed Obligations under the Completion Guaranty within ten (10) Business Days.   *See* Ex. 12, p. 3.

119.    Guarantors failed to promptly perform the Guaranteed Obligations under the Completion Guaranty within ten (10) Business Days after the Guarantor Demand Letter.

120.    Accordingly, a Guarantor Event of Default occurred and is continuing.

121.    Pursuant to Section 1.4(a) of the Completion Guaranty, upon the occurrence and during the continuance of a Guarantor Event of Default, Plaintiff may, at Plaintiff's option, and without any obligation to do so, proceed to perform on behalf of Guarantors any or all of the Guaranteed Obligations, and Guarantor shall, upon written demand, and whether or not construction of the Renovation Work is actually Completed by Lender, pay to Lender all actual costs and expenses expended by Lender in performing the Guaranteed Obligations, together with

interest thereon at the Default Rate, less any undisbursed Advances allocated to the cost of Completion of the Renovation Work to which Borrower would have been entitled.

122.    Following the Guarantor Event of Default, the Keeper has undertaken to perform Renovation Work at the Property and Plaintiff has incurred costs and expenses in connection with performing such work.

123.    Guarantors are liable to Plaintiff for costs and expenses expended by Lender in performing the Guaranteed Obligations, together with interest thereon at the Default Rate.

124.    Pursuant to Section 1.4(b) of the Completion Guaranty, upon the occurrence and during the continuance of a Guarantor Event of Default, Plaintiff may, from time to time without first requiring performance by Borrower or exhausting any or all security for the Loan, to bring any action at law or in equity of both to enforce the terms of the Completion Guaranty.

125.    Section 1.4(c) of the Completion Guaranty provides that upon the occurrence and during the continuance of a Guarantor Event of Default, Plaintiff may, at Plaintiff's option, seek damages (the "Liquidated Damages") from Guarantors in an amount equal to the excess, if any, of:

> (i) all hard costs and soft costs (including any consultants', inspectors' and other third-party costs) which would otherwise have been incurred in connection with the Completion of the Renovation Work in accordance with the terms of the Loan Agreement; minus
>
> (ii) an amount equal to the sum of any undisbursed Loan Deficiency Funds deposited with Lender and any undisbursed future Advances (but only to the extent such future Advances are allocated to pay for hard costs and soft costs set forth in Renovation Budget (including any consultants', inspectors' and other third party costs) as of the earliest to occur of (i) the Stated Maturity Date, (ii) the date of the acceleration of the Loan following an Event of Default, and (iii) Lender's delivery of the Liquidated Damages Payment Demand (hereinafter defined) (such earliest date, the "Calculation Date").
>
> For purposes of this clause (c), the hard costs and soft costs shall be equal to the amount of such hard costs and soft costs as estimated by Lender's

Consultant as of the Calculation Date. Any such amount estimated by Lender's Consultant shall be conclusive and binding in the absence of manifest error for purposes of determining Guarantor's liability under this clause (c), provided that Lender's Consultant shall have made such estimate or determination in good faith.

Such payment under this clause (c) shall be due no later than such ten (10) Business Day period set forth in this Section 1.4 following Lender's written demand therefor (the "Liquidated Damages Payment Demand"), along with supporting documentation, to the extent then available, evidencing the total amount of such Liquidated Damages, including, without limitation, evidence supporting the total costs and expenditures of Lender. If Lender elects to receive such payment under this clause (c), any such payment shall be (A) retained by Lender as liquidated damages, and not as a penalty, the parties agreeing that the estimation of such cost of Completion would be difficult to compute, and (B) Lender's sole and exclusive remedy under this Guaranty.

120.    Guarantors have failed to pay to Plaintiff amounts due under the Completion Guaranty.

**<u>FIRST CAUSE OF ACTION</u>**
**(Breach of Full Recourse Provisions of the Springing Recourse Guaranty)**

121.    Plaintiff incorporates herein by reference the paragraphs set forth above as if fully set forth herein.

122.    The Springing Recourse Guaranty is a valid and enforceable contractual agreement.

123.    Plaintiff has complied with all the terms and provisions of the Loan Documents.

124.    By reason of the willful misconduct and intentional misrepresentations of Designated Parties, Guarantors are liable for the entire Indebtedness under the Loan.

125.    Pursuant to Section 1.8 of the Springing Recourse Guaranty, Guarantors must "pay all reasonable costs and out-of-pocket expenses (including court costs and attorneys' fees, disbursements, costs and expenses) incurred by [Plaintiff] in the enforcement hereof or the preservation of [Plaintiff]'s rights hereunder and any and all damages, losses, claims, liabilities and related reasonable costs and out-of-pocket expenses, including court costs and attorneys' fees,

disbursements, costs and expenses incurred by [Plaintiff] arising from any breach or failure to timely perform any provisions of [the Springing Recourse Guaranty] by [Guarantors]."

126.    Plaintiff is entitled to judgment in an amount to be determined by the Court but no less than $26,314,932.85, plus interest, fees, costs, and attorneys' fees.

<u>**SECOND CAUSE OF ACTION**</u>
**(Breach of Limited Recourse Provisions of the Springing Recourse Guaranty)**

127.    Plaintiff incorporates herein by reference the paragraphs set forth above as if fully set forth herein.

128.    The Springing Recourse Guaranty is a valid and enforceable contractual agreement.

129.    Plaintiff has complied with all the terms and provisions of the Loan Documents.

130.    Guarantors are liable under the Springing Recourse Guaranty for all Losses arising from the forgoing Defaults, including Waste, failure to pay taxes, failure to maintain adequate insurance coverage, misapplication and/or misappropriation of Revenues, and damage to the Property arising from Borrower's gross negligence.

131.    Pursuant to Section 1.8 of the Springing Recourse Guaranty, Guarantors must "pay all reasonable costs and out-of-pocket expenses (including court costs and attorneys' fees, disbursements, costs and expenses) incurred by [Plaintiff] in the enforcement hereof or the preservation of [Plaintiff]'s rights hereunder and any and all damages, losses, claims, liabilities and related reasonable costs and out-of-pocket expenses, including court costs and attorneys' fees, disbursements, costs and expenses incurred by [Plaintiff]  arising from any breach or failure to timely perform any provisions of [the Springing Recourse Guaranty] by [Guarantors]."

132.    Plaintiff has sustained Losses as the result of the breaches of the Springing Recourse Guaranty in an amount to be determined by the Court.

## THIRD CAUSE OF ACTION
### (Breach of the Completion Guaranty)

133.     Plaintiff incorporates herein by reference the paragraphs set forth above as if fully set forth herein.

134.     The Completion Guaranty is a valid and enforceable contractual agreement.

135.     Plaintiff has complied with all the terms and provisions of the Loan Documents.

136.     The Completion Guaranty required Guarantors to perform the absolute and unconditional obligations set forth in Section 1.1 of the Completion Guaranty.

137.     Despite the demand from Plaintiff, Guarantor has failed to Complete the Renovation Work, pay Plaintiff its costs and expenses in connection with performing the Renovation Work.

138.     Plaintiff has sustained damages as the result of the breaches of the Completion Guaranty in an amount to be determined by the Court.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Fixing the amount due to Plaintiff from Defendants pursuant to the Guarantees and any other applicable Loan Documents;

B.     Adjudging that Plaintiff is entitled to be paid by Defendants the amounts due pursuant to the Guarantees, with interest, advances, other charges, attorneys' fees and costs; and

C.     Awarding Plaintiff its costs of suit and attorneys' fees; and

D.     Granting such other relief as is equitable and just.


**[SIGNATURE PAGE TO FOLLOW]**

Dated: New York, New York
       February 7, 2025

                    **HOLLAND & KNIGHT LLP**

                    By:*/s/ Vivian M. Arias*
                       Vivian M. Arias
                       787 Seventh Avenue, 31st Floor
                       New York, New York 10019
                       (212) 751- 3325
                       vivian.arias@hklaw.com
                       *Attorneys for Plaintiff*
                       *CAF Bridge Borrower GS, LLC*