UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAF BRIDGE BORROWER GS, LLC,<br><br>                    Plaintiff,<br><br>                    -v.-<br><br>MENASHE GRUNFELD, ABRAHAM SCHREIBER, MATISYOHU HERZKA, and AKIVA KRANZ,<br><br>                    Defendants. | 25 Civ. 1114 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

The instant litigation concerns a $24,000,000 loan (the "Loan") that Plaintiff CAF Bridge Borrower GS LLC ("CAF Bridge," or "Lender") provided to nonparty WKK Shreveport LLC ("WKK," or "Borrower").  The loan was secured by a mortgage and note (the "Mortgage") on a large multi-family construction project in Shreveport, Louisiana, known as the Jolie Apartments (the "Property").  In this Court, CAF Bridge sues Defendants Menashe Grunfeld, Abraham Schreiber, Matisyohu Herzka, and Akiva Kranz (collectively, "Defendants," or "Guarantors") for the alleged breach of two guaranties — the Springing Recourse Guaranty and the Completion Guaranty (together, the "Guaranties") — that these four defendants executed in connection with the Loan.

As it happens, this is not the only litigation concerning the financing of the Property.  Plaintiff previously commenced an action in Louisiana state court against Borrower WKK to foreclose on the Mortgage (the "Louisiana Action"), and that action remains pending.  In consequence, this Court must

now decide whether the two litigations may proceed in tandem, or whether this action must be dismissed or stayed in light of the Louisiana Action. Specifically, Defendants move the Court (i) to dismiss or stay the instant action under the *Colorado River* abstention doctrine, *see Colo. River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976); (ii) to issue a discretionary stay of the proceedings based on the Court's inherent authority; or (iii) to dismiss the Complaint for failure to state a claim based on New York's "One Action Rule."  For the reasons explained below, the Court grants Defendants' motion to stay this matter under the *Colorado River* abstention doctrine, and denies Defendants' motion to dismiss for failure to state a claim.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Parties, the Loan, and the Guaranties

The parties to this action are a subset of the parties to the Loan, namely the lender and the guarantors.  Lender is a Delaware LLC whose sole member

---

[1]    This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on certain of the exhibits attached to the Complaint and incorporated therein.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint); Fed. R. Civ. P. 10 ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, because a court analyzes a motion to dismiss or stay under *Colorado River* "as a motion to dismiss [under] Rule 12(b)(1) of [the] Federal Rules of Civil Procedure," *Iacovacci* v. *Monticciolo*, No. 18 Civ. 7984 (JFK), 2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019) (internal quotation marks omitted) (quoting *Stahl York Ave. Co., LLC* v. *City of New York*, No. 14 Civ. 7665 (ER), 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015), *aff'd*, 641 F. App'x 68 (2d Cir. 2016) (summary order)), the Court also may consider extrinsic evidence in resolving the motion, *see, e.g., Nicholas* v. *Trump*, 433 F. Supp. 3d 581, 584 n.2 (S.D.N.Y. 2020); *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)).  Accordingly, the Court draws jurisdictional facts from the Declarations of Menashe Grunfeld ("Grunfeld Decl." (Dkt. #18)) and Nerissa Pryba

is a Delaware corporation that maintains its principal place of business in California.  (Compl. ¶ 4).  Guarantors are, upon information and belief, citizens of New Jersey.  (*Id.* ¶¶ 5-8).

On May 5, 2022, CoreVest American Finance Lender LLC ("CoreVest"), Plaintiff's predecessor-in-interest, made the Loan.  (Compl. ¶ 13).  The Loan was evidenced by a promissory note in the original principal amount of $24,000,000 that Borrower executed in favor of CoreVest, and it was secured by the Mortgage.  (*Id.* ¶¶ 15-16).

In connection with the Loan, Guarantors executed (i) the Springing Recourse Guaranty, wherein Guarantors guaranteed the payment and performance of certain obligations, mostly related to payment of the Loan and the care of the Property (Compl. ¶ 21; *see generally id.*, Ex. 4 ("Springing Recourse Guaranty")), and (ii) the Completion Guaranty, wherein Guarantors guaranteed the payment and performance of other obligations, including the completion of renovation work planned for the Property (Compl. ¶ 22; *see generally id.*, Ex. 5 ("Completion Guaranty")).  The Guaranties include choice-of-law provisions reciting that New York law governs, as well as forum-selection clauses permitting lawsuits under the agreements to be brought in New York

---

("Pryba Decl." (Dkt. #20)).  Moreover, included as exhibits are filings on the docket of the Louisiana Action, of which the Court may take judicial notice.  *See Mangiafico* v. *Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (explaining that "docket sheets are public records of which" courts may take judicial notice); Fed. R. Evid. 201.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss or stay as "Def. Br." (Dkt. #19), to Plaintiff's memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt. #21), and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #24).

courts.  (Springing Recourse Guaranty ¶¶ 5.3(a)-(b); Completion Guaranty ¶¶ 5.3(a)-(b)).

### 2.    The Alleged Breaches

According to Plaintiff, Borrower defaulted on the Loan by, among other things, failing to make monthly payments and failing to deposit required reserves.  (Compl. ¶¶ 34-42).  Additionally, Borrower and Guarantors allegedly failed to complete the renovation work required by the Loan, permitted numerous liens and judgments to be docketed against the Property, and willfully abandoned the Property.  (*Id.* ¶ 2).  These actions caused waste and significant deterioration of the Property.  (*Id.* ¶¶ 2, 84-96).  As a result, the Property experienced multiple fires, criminal activity, and the shutting off of utilities.  (*Id.*).  In response, the mayor of Shreveport issued an emergency declaration.  (*Id.* ¶ 2).  Plaintiff argues that this mismanagement has caused the amount due and owing under the Loan to exceed the value of the Property. (Pryba Decl. ¶ 25).

### B.    Procedural Background

### 1.    The Louisiana Action

On or about June 7, 2024, Plaintiff commenced the Louisiana Action. (Compl. ¶ 43; *see generally* Grunfeld Decl., Ex. A ("Louisiana Action Petition")). In the Louisiana Action, Plaintiff sought recognition of security interests over the Property and judgment against Borrower for amounts allegedly owed to it under the Loan, totaling $24,774,920.30 plus interest, attorneys' fees, and other costs.  (Louisiana Action Petition ¶¶ 2, 41).  As support, Plaintiff

recounted numerous alleged events of default by Borrower, including nonpayment, failure to complete required renovation work, and allowing the property to waste.  (*Id.* ¶¶ 22-29).

Plaintiff sought the appointment of a court-appointed custodian for the Property, or "keeper," which the Louisiana court appointed on June 11, 2024. (Compl. ¶ 44; *id.*, Ex. 10 (Order of Appointment)).  In the time since the appointment, the keeper has remained in possession of the property.  (Pryba Decl. ¶ 16).  Plaintiff served discovery in the Louisiana Action on April 29, 2025 (*id.* ¶ 17), and discovery is presumably ongoing.

The parties dispute how close to trial the Louisiana Action is.  As of the filing of the instant motion, no trial date had been set.  (Pryba Decl. ¶ 19). Defendants claim that the Louisiana Action may be ready for trial in the coming months.  (Def. Br. 14-15).  Plaintiff retorts that "there is no indication that the Louisiana Foreclosure Action will be resolved within that timeframe." (Pl. Opp. 3-4, 17 (citing Pryba Decl. ¶ 20)).  In any event, Plaintiff asserts that there will be a significant deficiency remaining following the foreclosure of the property given the Property's current value.  (Pryba Decl. ¶ 25).

### 2. The Instant Action

Plaintiff filed the Complaint in this action on February 7, 2025, approximately eight months after the Louisiana court appointed a keeper over the Property.  (Dkt. #1).  The Complaint raises three claims.  *First*, Plaintiff alleges that Defendants are liable under the Springing Recourse Guaranty for the entire Indebtedness under the Loan.  (Compl. ¶¶ 121-126).  *Second*,

Plaintiff alleges that under the limited recourse provisions of the Springing Recourse Guaranty, Defendants are liable for losses arising from Borrower's gross negligence. (*Id.* ¶¶ 127-132). *Third,* Plaintiff alleges that Defendants are liable for failing to perform necessary renovation work under the Completion Guaranty. (*Id.* ¶¶ 133-138). Plaintiff seeks $26,314,932.85, plus interest, fees, costs, and attorneys' fees. (*Id.* ¶ 126).

On April 17, 2025, Defendants informed the Court of their intention to move to dismiss or to stay the case. (Dkt. #14). May 22, 2025, the Court held a pre-motion conference regarding Defendants' anticipated motion. (May 22, 2025 Minute Entry). Defendants then filed the instant motion with supporting papers on June 13, 2025. (Dkt. #17-19). Plaintiff filed its opposition on July 11, 2025. (Dkt. #20-21). On July 25, 2025, Defendants filed their reply, thus concluding the briefing on the instant motion. (Dkt. #24, 26).

The same day that Defendants filed their reply, the Court temporarily terminated Defendants' motion and referred the parties to Magistrate Judge Barbara C. Moses for a settlement conference, per their request. (Dkt. #22-23, 25). Two months later, the parties informed the Court that their efforts at settlement had been unsuccessful. (Dkt. #32). The Court then reinstated Defendants' motion on September 26, 2025. (Dkt. #33).

In short, Defendants' motion argues that this case should be dismissed or stayed for three reasons. *First,* Defendants argue that the Court should dismiss or stay the case under the *Colorado River* abstention doctrine. (Def. Br. 4-16). *Second,* they suggest that even if *Colorado River* is inapplicable, the

6

Court should exercise its discretion to stay the matter, as it recently did in *Wells Fargo Bank, Nat'l Ass'n* v. *Patel*, No. 24 Civ. 1162 (KPF), 2025 WL 844161 (S.D.N.Y. Mar. 18, 2025). (Def. Br. 16-19). *Third*, Defendants argue that the Court should dismiss the case under Federal Rule of Civil Procedure 12(b)(6) because New York's "One Action Rule," codified at New York Real Property Actions & Proceedings Law § 1301(3), prohibits filing multiple lawsuits to recover the same mortgage debt. (Def. Br. 20-25). The Court agrees with the Defendants on the first point, does not reach the second point, and disagrees with Defendants on the third point.

## DISCUSSION

### A. The Court Abstains Under *Colorado River*

#### 1. Applicable Law

"[F]ederal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Niagara Mohawk Power Corp.* v. *Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 817). But that "duty is not … absolute." *Quackenbush* v. *Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). A federal court may decline to exercise its jurisdiction in "'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Id.* (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 813).

"In the seminal case of *Colorado River Water Conservation District* v. *United States*, the Supreme Court set forth what is now referred to as the *Colorado River* abstention doctrine." *Thompson* v. *Daxor Corp.*, No. 23 Civ.

7

8272 (KPF), 2024 WL 1484192, at *2 (S.D.N.Y. Apr. 5, 2024).  Under that doctrine, a federal court may abstain from exercising jurisdiction "in situations involving the contemporaneous exercise of concurrent jurisdictions [by a federal and state court]."  *Colo. River Water Conservation Dist.*, 424 U.S. at 817.

But the existence of a contemporaneous state court action alone is not sufficient for abstention.  "In deciding whether to abstain under *Colorado River*, a district court must first determine whether the federal and state court cases are parallel."  *U.S. Bank Nat'l Ass'n* v. *E. Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020) (summary order) (citing *Nat'l Union Fire Ins. Co.* v. *Karp*, 108 F.3d 17, 22 (2d Cir. 1997)).  "Federal and state proceedings are parallel for purposes of abstention when the two proceedings are 'essentially the same' — when there is an identity of parties, and the issues and relief sought are the same."  *Id.* (quoting *Nat'l Union Fire Ins. Co.*, 108 F.3d at 22).

That said, "'[p]erfect symmetry of parties and issues is not required' for the federal and state proceedings to be considered parallel."  *Phillips* v. *Citibank, N.A.*, 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017) (quoting *Abe* v. *N.Y. Univ.*, No. 14 Civ. 9323 (RJS), 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016)).  "Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."  *Abe*, 2016 WL 1275661, at *6 (internal quotation marks omitted) (quoting *Shields* v. *Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012)).  Put another way, "even if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are

comprised of the same essential issues." *Tuebor Reit Sub LLC* v. *Paul*, No. 19 Civ. 8540 (JPO), 2020 WL 4897137, at *5 (S.D.N.Y. Aug. 19, 2020) (internal quotation marks omitted) (quoting *Garcia* v. *Tamir*, No. 99 Civ. 298 (LAP), 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999)).

If the actions are parallel, the court must then consider six factors laid out in *Colorado River* to determine whether to abstain from exercising jurisdiction. *U.S. Bank Nat'l Ass'n*, 804 F. App'x at 107. The factors are:

> [i] the assumption of jurisdiction by either court over any res or property; [ii] the inconvenience of the federal forum; [iii] the avoidance of piecemeal litigation; [iv] the order in which jurisdiction was obtained; [v] whether state or federal law supplies the rule of decision; and [vi] whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Id.*; *accord Colo. River Water Conservation Dist.*, 424 U.S. at 818-19; *Niagara Mohawk Power Corp.*, 673 F.3d at 100-01; *Kamerman* v. *Steinberg*, 681 F. Supp. 206, 213 (S.D.N.Y. 1988).

### 2. Analysis

The Court concludes that abstention is warranted under *Colorado River*. Particularly instructive to the Court's analysis are two recent decisions from sister courts in this District, *Tuebor Reit Sub LLC* v. *Paul*, 2020 WL 4897137, and *Wells Fargo Bank, N.A.* v. *Silberberg*, No. 23 Civ. 2811 (JGLC), 2024 WL 36006 (S.D.N.Y. Jan. 3, 2024). Ultimately, the Court finds that the Louisiana Action and the instant action are "essentially the same," *Nat'l Union Fire Ins. Co.*, 108 F.3d at 22, and it thus abstains under *Colorado River*.

### a.    Recent Case Law

The Court begins by recounting the two recent cases on which its abstention analysis is predicated.  In *Tuebor Reit Sub LLC*, a lender sued a borrower for defaulting on a loan in Texas state court, seeking foreclosure of the property that secured the loan.  2020 WL 4897137, at *1-2.  The foreclosure action was then postponed because the borrower filed for bankruptcy.  *Id.* at *2.  Under the applicable guaranty, the bankruptcy triggered the guarantor's recourse, so the lender sued the guarantor in this District.  *Id.*  The federal court ultimately abstained under *Colorado River*.  *Id.* at *7.

Similarly, in *Silberberg*, a lender commenced a foreclosure action against a borrower in Illinois state court.  2024 WL 36006, at *1.  Two years later, the lender filed an action in this District against the guarantor, seeking to enforce the guaranty in response to various alleged defaults by the borrower.  *Id.* at *1-2.  As in *Tuebor Reit Sub LLC*, the federal court in *Silberberg* abstained under *Colorado River*.  *Id.* at *5.

### b.    The Instant Action and the Louisiana Action Are Parallel

In this case, the question of parallelism is a close one.  Plaintiff posits that the actions are not parallel because they "involve different parties, different contracts and seek different relief."  (Pl. Opp. 7).  But the Second Circuit has warned courts not to "lose sight of the forest for the trees" when performing the prudential *Colorado River* analysis.  *Arkwright-Bos. Mfrs. Mut. Ins. Co.* v. *City of New York*, 762 F.2d 205, 212 (2d Cir. 1985).  Plaintiff has

10

done just that, overstating the differences between the two actions and relying on distinctions that are irrelevant for purposes of *Colorado River*. Ultimately, the Court adopts the reasoning of *Tuebor Reit Sub LLC* and *Silberberg* and concludes that the instant action and the Louisiana Action are parallel.

### i.   Parallelism of Parties

Regarding parallelism of parties, "[t]hat Defendant[s] [are] not named in the state court action is of no moment — as ... perfect symmetry of parties is not required." *Silberberg*, 2024 WL 36006, at *3. What matters more is that "the interests of the parties in each case are congruent," *Pappas Harris Cap., LLC* v. *Bregal Partners, L.P.*, No. 20 Civ. 6911 (VEC), 2021 WL 3173429, at *5 (S.D.N.Y. July 27, 2021) (internal quotation marks omitted) (quoting *Greenburgh No. 11 Fed'n of Tchrs.* v. *Bd. of Educ. of Greenburgh Eleven Union Free Sch. Dist.*, No. 95 Civ. 2938 (JSR), 2006 WL 4490731, at *2 (S.D.N.Y. Sept. 26, 2006)), such that "they would benefit from the same outcome," *id.* (collecting cases).

Here, there is sufficient interest alignment among the parties. Defendants are the "ultimate co-owners of Borrower." (Def. Br. 6 (citing Grunfeld Decl. ¶ 1)). Specifically, Defendants own 30% of the corporate entity that owns Borrower. (Def. Reply 2-3; *see also* Springing Recourse Guaranty 1 (stating that "Guarantor is a direct or indirect owner of an equity interest in Borrower, and accordingly will derive substantial direct and indirect benefits from the transactions contemplated by the Loan Agreement"); Completion Guaranty 1 (same)). And one Defendant, Mr. Grunfeld, executed the Mortgage

11

on behalf of Borrower.  (Grunfeld Decl., Ex. A ¶¶ 15-16).  Given this relationship, and given the fact that Borrower's putative defaults are alleged to have triggered Defendants' liability under the Guaranties, it is hard to envision how Borrower and Guarantors could want anything other than a finding that Borrower did not default.

The instant case is thus different than *Patel*, in which the Court found that the borrower's and the guarantor's interests were not sufficiently aligned because "this Court could still possibly find Guarantors liable for the full Loan based on" an alleged default raised in the federal action that was not at issue in the state action.  *Patel*, 2025 WL 844161, at *9.  Here, by contrast, Plaintiff has not explained any possible way in which Guarantors could be liable if Borrower did not default.[2]  As other courts have held, the lack of complete identity of parties does not render the two actions nonparallel when the diverging parties have such substantial overlap in interests.  *See, e.g.*, *Silberberg*, 2024 WL 36006, at *3; *Tuebor Reit Sub LLC*,  2020 WL 4897137, at *5; *JPMorgan Chase Bank, N.A.* v. *Avara US Holdings LLC*, No. 23 Civ. 7145 (JGK), 2024 WL 709068, at *5 (S.D.N.Y. Feb. 21, 2024) (finding parallelism of

---

[2]    Plaintiff asserts that "[t]his Court could still find the Guarantors liable for the amounts due under the [Guaranties] under the theories at issue in this Action — including that they committed waste and willful misconduct by abandoning the Property and are liable under the Completion Guaranty for failing to complete the renovation." (Pl. Opp. 12). But the examples Plaintiff provides are the very theories of liability that Plaintiff raises against Borrower in the Louisiana Action. (*See* Louisiana Action Petition ¶¶ 22-29). The Court cannot see — and Plaintiff has not explained — how holding Guarantors liable under those theories could be at all consistent with a holding by the Louisiana court that Borrower did not breach.  As discussed later, inconsistent disposition of cases is a main concern animating *Colorado River*.  *See Arkwright-Bos. Mfrs. Mut. Ins. Co.* v. *City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) (calling "the danger of piecemeal litigation" a "paramount consideration" in the *Colorado River* analysis).

12

parties when the federal defendant was "a holding company for the assets of the [state] defendant"); *Iacovacci* v. *Monticciolo*, No. 18 Civ. 7984 (JFK), 2019 WL 2074584, at *5 (S.D.N.Y. May 9, 2019) (finding parallelism of parties in an employment dispute when the federal defendants were "the individuals through which" the corporate entities that were the state defendants were "alleged to have acted").

### ii.        Parallelism of Issues

In addition to having parties with congruent interests, the Louisiana Action and the instant action also raise parallel issues.  Contesting this point, Plaintiff focuses on the fact that the Louisiana Action seeks foreclosure based on the Mortgage, while the instant action seeks money damages based on the Guaranties.  (Pl. Opp. 8-10).  The distinctions that Plaintiff identifies are technically correct, but beneath these surface-level differences, the two actions feature the same issues and seek substantially similar relief for purposes of *Colorado River*.

As a reminder, "even if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are comprised of the same essential issues." *Garcia*, 1999 WL 587902, at *3 (citing *Gen. Reinsurance Corp.* v. *Ciba-Geigy Corp.*, 853 F.2d 78, 81 (2d Cir. 1988)); *accord Tuebor Reit Sub LLC,* 2020 WL 4897137, at *5.  The *Tuebor Reit Sub LLC* court, when considering the question of parallelism, explained that in both actions, the lender sought "recovery as a result of … breaches under the loan and guaranty.  The fact that [the lender] seeks recovery via a

13

judicial foreclosure in … state court and recovery via a monetary judgment here makes no difference, in light of the fact that the breaches pleaded by [the lender] here are the same breaches pleaded in … state court." *Tuebor Reit Sub LLC,* 2020 WL 4897137, at *5; *see also Silberberg*, 2024 WL 36006, at *3 (finding parallelism because the alleged breaches in the federal action "arise from the same conduct as the breaches pleaded in … state court").

Such is the case here. In the Louisiana Action, Plaintiff seeks judgment for the amount that Borrower owed under the loan, totaling $24,774,920.30. (Louisiana Action Petition ¶ 41). Plaintiff alleges numerous defaults, including nonpayment, failure to complete required renovation work, and allowing the property to waste. (*Id.* ¶¶ 22-29). Here, Plaintiff alleges breaches based on precisely the same conduct by the Borrower — namely, the Borrower's nonpayment, waste resulting from gross negligence, and failure to perform necessary renovation work (Compl. ¶¶ 121-138) — and seeks nearly the same figure in damages (*id.* ¶ 126).

To be sure, Plaintiff sources its entitlement to relief in the two actions from different contracts — the Mortgage in the Louisiana Action and the Guaranties here. While relevant, this fact does not end the inquiry. The key question not whether the two actions concern the same documents, but rather whether they feature "the same essential issues." *Garcia*, 1999 WL 587902, at *3; *accord Tuebor Reit Sub LLC*, 2020 WL 4897137, at *5. Here, they do, because liability under the Guaranty hinges on liability under the Mortgage. As in *Silberberg*, "[a]lthough the forms of relief sought by Plaintiff in this case

and the state action are not identical, the recovery in both actions stems from Borrower's alleged breaches of the Loan Agreement." *Silberberg*, 2024 WL 36006, at *3; *see also Corus Bank, N.A.* v. *de Guardiola*, 593 F. Supp. 2d 991, 994 (N.D. Ill. 2008) ("[The plaintiff's] claims on the guaranty are only valid if its claims under the Amended Loan Agreement are themselves valid and thus, the issues here are inextricably intertwined with the issues in the [state] case.").

Additionally, if Plaintiff recovers the full amount due under the Loan in the Louisiana Action, that recovery would seemingly dispose of all claims in the instant case. *See Tuebor Reit Sub LLC*, 2020 WL 4897137, at *5 (finding parallelism because the result of the state court foreclosure proceeding could "moot [the federal] proceeding in its entirety"); *Abe*, 2016 WL 1275661, at *6 ("[P]arallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." (internal quotation marks omitted) (quoting *Shields*, 891 F. Supp. 2d at 577)).  It matters little to the parallelism analysis that the foreclosure may not yield the full amount owed by Borrower.  *See Silberberg*, 2024 WL 36006, at *3 (rejecting argument that actions were not parallel because the foreclosure price was unlikely to cover the full amount of the debt).

This case is far different from *Patel*, in which this Court found that the issues and relief requested in the federal and state cases were not parallel. *Patel*, 2025 WL 844161, at *7-9.  In that case, the Court considered the parallelism of (i) an Alabama state case in which a lender sued a borrower for receivership over a property, and (ii) a New York federal case in which the

15

lender sued the guarantors for breach of a guaranty.  *Id.* at *5-9.  The Court, "recogniz[ing] that the two actions involve, in part, the same underlying Loan Documents and emanate, in part, from some of the same alleged breaches of those Loan Documents by Borrower," nonetheless found parallelism lacking. *Id.* at *8.  But the Court rested its decision on multiple facts not present here.

*First*, the plaintiff in *Patel* alleged breaches of the guaranty that were separate from those made under the loan agreement, such that "resolution of Plaintiff's claims in the [state case] would not necessarily dispose of all its claims in [the federal] case." *Patel*, 2025 WL 844161, at *9.  *Second*, the state action sought appointment of a receiver, whereas the federal action sought money damages.  *Id.*  Crucially, the Court observed that the appointment of a receiver "is different from a foreclosure," *id.*, suggesting that its decision regarding parallelism at least in part hinged on the plaintiff not seeking a foreclosure in the state action.

Here, by contrast, Plaintiff does seek a foreclosure in the Louisiana Action, so it is possible that all relief sought here may be awarded in the Louisiana Action.  What is more, Plaintiff has not identified any claim in the instant action that is entirely independent of a claim in the Louisiana Action. The Court thus follows its sister courts in finding parallelism between a foreclosure suit in state court and a guaranty suit in federal court regarding the same loan, at least where there is some connection between the borrower and guarantor, and where the plaintiff raises no unique basis for liability in the

16

federal guaranty action.  *See Silberberg*, 2024 WL 36006, at *3; *Tuebor Reit Sub LLC*, 2020 WL 4897137, at *5.[3]

### c.    The *Colorado River* Factors Weigh in Favor of Abstention

Having determined that the two cases are parallel, the Court next considers whether abstention is appropriate under the six *Colorado River* factors.  Once again, the decisions in *Tuebor Reit Sub LLC* and *Silberberg* are instructive.  The Court finds that the factors weigh similarly here as they did in those cases, both of which resulted in the court abstaining.

### i.    Jurisdiction Over a Res

The first factor is "whether the federal or state court has obtained jurisdiction over a res."  *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (citing *Colo. River Water Conservation Dist.*, 424 U.S. at 818).  "Although the instant action does not itself 'involve' a res, the [Louisiana] state court exercised jurisdiction over" the Property, which the instant case is "inextricably linked to," as the Property "secure[d] the loan" that Defendants guarantied.  *Tuebor Reit Sub LLC*, 2020 WL 4897137, at *5; *see Fed. Deposit Ins. Corp.* v. *Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999) ("A foreclosure action is an *in rem* proceeding.").  "Consequently, this factor weighs in favor of abstention."  *Tuebor Reit Sub LLC*, 2020 WL 4897137, at *5; *see also, e.g.*, *Phillips*, 252 F. Supp. 3d

---

3       The Court recognizes that there are courts in this District that appear to have come out on the other side of this issue, *see, e.g.*, *Bank of N.Y.* v. *Bin Saud*, 628 F. Supp. 474, 476 (S.D.N.Y. 1986) (holding that an action against a guarantor was "largely distinguishable" from a foreclosure action related to the same loan "by virtue of the distinct contractual relationships established between the parties"), but it finds the analyses in *Tuebor Reit Sub LLC* and *Silberberg* to be persuasive.

at 299 (concluding that "[a]lthough the … damages claims here do not independently implicate a res, they remain inextricably linked with the issues" related to the res in the state action, so "this factor weighs in favor of abstention"); *Silberberg*, 2024 WL 36006, at *4 (finding the factor to "weigh[ ] in favor of abstention" because the "state court has jurisdiction over the property" at issue); *Cassis* v. *Fed. Nat'l Mortg. Ass'n*, No. 21 Civ. 969 (MKB), 2021 WL 6197064, at *5 (E.D.N.Y. Dec. 31, 2021) ("[W]here the state court proceeding is a foreclosure action, 'this factor strongly favors abstention.'" (quoting *Krondes* v. *Nationstar Mortg., LLC*, No. 17 Civ. 4974 (WHP), 2018 WL 2943774, at *3 (S.D.N.Y. June 12, 2018), *aff'd*, 789 F. App'x 913 (2d Cir. 2020) (summary order))).

### ii.    Inconvenience to the Parties

The second factor requires the Court to determine "whether the federal forum is less inconvenient than the state forum for the parties." *Niagara Mohawk Power Corp.*, 673 F.3d at 101. On this issue, there are facts supporting both sides. On the one hand, the res is located in Louisiana, and many of the alleged events of default occurred in that forum. (*See* Compl. ¶¶ 2, 84-96). As a result, many of the relevant witnesses will be in Louisiana. Additionally, neither Plaintiff nor Defendants are citizens of New York. (*Id.* ¶¶ 4-8).

On the other hand, the Guaranties designated New York courts as a proper forum for litigation, implicitly recognizing this District as convenient. (Springing Recourse Guaranty ¶¶ 5.3(a)-(b); Completion Guaranty ¶¶ 5.3(a)-

(b)).  Courts in this District have found forum-selection clauses to be sufficient to counsel against abstention.  *See Silberberg*, 2024 WL 36006, at *4 ("Because … the Guaranty's forum selection designates New York courts 'as the proper forum' for litigation, the Court finds that this factor counsels against abstention."); *RECAP Invs. Xi-Fund A, L.P.* v. *McCullough Harris, LLC*, 760 F. Supp. 2d 368, 371 (S.D.N.Y. 2010) ("By agreeing to the exclusive jurisdiction of New York courts, the parties necessarily acknowledge that New York is not an inconvenient forum.").

Complicating this analysis is the fact that the forum-selection clause here appears to be nonexclusive.  (*See* Def. Reply 7 (noting that the forum selection clauses use the word "may," indicating that the parties did not agree to exclusive jurisdiction in New York)).  Considering these competing factors in tandem — the underlying events that took place in Louisiana and the nonexclusive forum-selection clause — the Court concludes that this factor weighs slightly in favor of abstention.

### iii.    Avoiding Piecemeal Litigation

"'The danger of piecemeal litigation is the paramount consideration' in the [*Colorado River*] analysis, due in part to the possibility of 'inconsistent disposition of the claims.'"  *Phillips*, 252 F. Supp. 3d at 299 (alterations adopted) (quoting *Arkwright-Bos. Mfrs. Mut. Ins. Co.*, 762 F.2d at 211).  "If 'maintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort,' the 'avoidance of piecemeal litigation is best served by leaving these suits in the state court.'"

*Sitgraves* v. *Fed. Home Loan Mortg. Corp.*, 265 F. Supp. 3d 411, 414 (S.D.N.Y. 2017) (alteration adopted) (quoting *Arkwright-Bos. Mfrs. Mut. Ins. Co.*, 762 F.2d at 211).  Further, the Second Circuit has explained that "the primary context in which we have affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel."  *Woodford* v. *Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 524 (2d Cir. 2001).

These concerns are especially salient here.  *First,* "because [Plaintiff] may recover the full ... amount in the [Louisiana] state court proceedings, moving the current action forward risks a 'waste of judicial resources' without first waiting to see if [Plaintiff] even needs to continue this suit to recover.'"  *Tuebor Reit Sub LLC*, 2020 WL 4897137, at *6 (alteration adopted) (quoting *Sitgraves*, 265 F. Supp. 3d at 414).

*Second*, there is a strong risk of inconsistent outcomes not preventable by principles of res judicata or collateral estoppel.  Should Plaintiff prevail in the instant action, it will not be able to offensively use any victory in the Louisiana Action because Borrower is not a party to this action nor in privity with Guarantors.  If Borrower then succeeds in Louisiana, this Court would have held Guarantors liable for Borrower's actions that, according to the Louisiana court, Borrower did not actually take.  *See Gen. Star Int'l Indem., Ltd.* v. *Chase Manhattan Bank*, 57 F. App'x 892, 894 (2d Cir. 2003) (summary order) ("The District Court correctly reasoned that, because the insurance companies ... were not parties to the federal action, 'there is a risk of

inconsistent outcomes not preventable by principles of *res judicata* and collateral estoppel.'" (quoting *Gen. Star Int'l Indem., Ltd.* v. *Chase Manhattan Bank*, No. 01 Civ. 11379 (AGS), 2002 WL 850012, at \*7 (S.D.N.Y. May 3, 2002), *aff'd*, 57 F. App'x 892)).

Plaintiff argues that this factor weighs against abstention because, as in *Patel*, this Court may find the Guarantors liable notwithstanding the result of the Louisiana Action. (Pl. Opp. 12). But as explained above, the Court cannot see — and Plaintiff has not explained — how that could be the case. Plaintiff's claims in this Court and in Louisiana state court hinge on the same events of default by Borrower. (*Compare* Compl. ¶¶ 2, 34-42, 84-96, *with* Louisiana Action Petition ¶¶ 22-29). Accordingly, Plaintiff's attempt to explain away the risk of inconsistent outcomes is unpersuasive, and this "paramount consideration" weighs in favor of abstention. *Phillips*, 252 F. Supp. 3d at 299 (internal quotation marks omitted) (quoting *Arkwright-Bos. Mfrs. Mut. Ins. Co.*, 762 F.2d at 211); *see Tuebor Reit Sub LLC*, 2020 WL 4897137, at \*6 (reaching the same conclusion); *Silberberg*, 2024 WL 36006, at \*4 (same).

### iv.        The Order in Which Jurisdiction Was Obtained

Next, the Court must consider "the order in which jurisdiction was obtained." *Niagara Mohawk Power Corp.*, 673 F.3d at 102. This prong "turns not just 'on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions.'" *Id.* (quoting *Village of Westfield* v. *Welch's*, 170 F.3d 116, 122 (2d Cir. 1999)). Here, the Louisiana Action was filed eight months before the federal action. More importantly, the

21

federal action remains at the motion to dismiss stage, while discovery is underway in the Louisiana Action.  (Pryba Decl. ¶ 17).  Therefore, this factor weighs in favor of abstention.  *See Tuebor Reit Sub LLC*, 2020 WL 4897137, at *6 (reaching the same conclusion); *Silberberg*, 2024 WL 36006, at *4 (same).

> ### v.    Whether State or Federal Law Supplies the Rule of Decision

The next factor requires the Court to determine "what law — state, federal, or foreign — provides the rule of decision in the case." *Niagara Mohawk Power Corp.*, 673 F.3d at 102.  "When the applicable substantive law is federal, abstention is disfavored[.]" *Id.* (internal quotation marks omitted) (quoting *Village of Westfield*, 170 F.3d at 123-24).  "[A]lthough the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex," *Village of Westfield*, 170 F.3d at 124, or unless "the bulk of the litigation would necessarily revolve around the state-law rights of numerous parties," *De Cisneros* v. *Younger*, 871 F.2d 305, 309 (2d Cir. 1989) (internal quotation marks omitted and alterations adopted) (quoting *Gen. Reinsurance Corp.*, 853 F.2d at 82); *see also Bethlehem Contracting Co.* v. *Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986) (explaining that because "[s]tate law provides the rule of decision in all diversity cases," this factor weighs in favor of abstention only in "rare circumstances").

Here, Plaintiff's breach of contract action is governed by state law, suggesting that abstention may be proper.  Plaintiff counters, however, that the state law at issue here is New York's, which a New York federal court is "more

than qualified to decide." (Pl. Opp. 13). Perhaps. *See FaZe Clan Inc.* v. *Tenney*, 407 F. Supp. 3d 440, 444 (S.D.N.Y. 2019) ("To the extent New York law applies, this Court is the more competent forum[.]").

But while there is disagreement among courts in this Circuit, this Court recognizes that "[t]he focus of this factor is not which court is better suited to decide a legal issue, but rather 'whether federal or state law governs.'" *Silberberg*, 2024 WL 36006, at *5 (quoting *Tuebor Reit Sub LLC*, 2020 WL 4897137, at *6). *But see FaZe Clan Inc.*, 407 F. Supp. 3d at 444 (concluding that the application of New York law weighs against abstention); *Suffolk Fed. Credit Union* v. *Cumis Ins. Soc'y, Inc.*, 829 F. Supp. 2d 82, 88 (E.D.N.Y. 2010) (same). Nonetheless, given that the state law at issue here does not appear "novel or particularly complex," *Village of Westfield*, 170 F.3d at 124, the Court finds this factor neutral.

### vi. Whether the State Court Proceeding Will Adequately Protect Plaintiff's Rights

The last question is whether the Louisiana Action "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Niagara Mohawk Power Corp.*, 673 F.3d at 103 (internal quotation marks omitted) (quoting *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)). This is also phrased as "whether the state procedures are adequate to protect the plaintiff's federal rights." *Id.* at 100-01 (internal quotation marks omitted) (quoting *Woodford*, 239 F.3d at 522). Here, there is no basis to question the Louisiana court's ability to resolve the issues or protect Plaintiff's interests. Indeed, the Louisiana court already appointed a

23

keeper, who has remained in possession of the Property.  (Compl. ¶ 44; Pryba Decl. ¶¶ 15-16).

Plaintiff's only argument to the contrary is that Guarantors are not parties to the Louisiana Action.  (Pl. Opp. 14).  But that is Plaintiff's doing, as it apparently has not sought to add Guarantors as defendants in that action at any point, nor have they attempted to bring any new action against Guarantors in Louisiana.  The Court thus concludes that the Louisiana court is an adequate forum.

"Nevertheless, the ability of the [Louisiana] court to adequately protect [Plaintiff's] interests renders the sixth factor largely neutral."  *Estee Lauder Cos. Inc.* v. *Batra*, 430 F. Supp. 2d 158, 169 (S.D.N.Y. 2006).  This is because, "[a]lthough any possible inadequacy of the state forum to protect the federal plaintiff's rights would provide a strong reason to exercise federal jurisdiction, the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to *Colorado River*."  *Id.* (internal quotation marks omitted) (quoting *In re Asbestos Litig.*, 963 F. Supp. 247, 253 (S.D.N.Y. 1997)).

### d. *Colorado River* Abstention Is Proper, and Defendants' Request for a Discretionary Stay Is Moot

As explained above, the Louisiana Action and the instant action are parallel, and four *Colorado River* factors favor abstention, including the piecemeal litigation factor which courts consider to be the "paramount consideration."  *Arkwright-Bos. Mfrs. Mut. Ins. Co.*, 762 F.2d at 211.  The other two factors are neutral, which means that they weigh against abstention.  *See Niagara Mohawk Power Corp.*, 673 F.3d at 101 (holding that a neutral *Colorado*

*River* factor weighs against abstention).  Balancing these factors, the Court abstains.

This ruling moots Defendants' request for a stay under the Court's inherent power.  (*See* Def. Br. 16-19 (arguing that the Court should stay the case under its inherent powers as an alternative to the *Colorado River* argument)).  *See Silberberg*, 2024 WL 36006, at *2 ("Because the Court finds that a stay is warranted under *Colorado River*, the Court does not analyze whether a discretionary stay is warranted.").  But this holding does not resolve Defendants' motion in its entirety because abstaining under *Colorado River* can take the form of a stay or a dismissal.  *Tuebor Reit Sub LLC*, 2020 WL 4897137, at *7; *see also 767 Third Ave. Assocs.* v. *Consulate Gen. of Socialist Fed. Republic of Yugoslavia*, 218 F.3d 152, 163 (2d Cir. 2000) ("[W]hen federal courts apply … abstention principles they may enter a stay, but are usually not permitted to dismiss the action altogether if the action is for money damages.").  The Court will thus proceed to consider Defendants' alternate dismissal argument.  If that argument fails, the Court will then weigh whether a dismissal or stay is proper under *Colorado River*.

## B.   The Court Declines to Dismiss the Complaint Due to New York's One Action Rule

### 1.    Applicable Law

Under Rule 12(b)(6), a defendant may seek dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, 'assume all

25

well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'" *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).  A court may also consider "matters of which the court may take judicial notice." *Lively* v. *WARFA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021).

### 2. Analysis

Defendants argue that Plaintiff fails to state a claim upon which relief can be granted because New York's One Action Rule prohibits this action.  (Def. Br. 20-25).  New York's One Action Rule states as follows:

> While [an] action [to recover any part of the mortgage date] is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgage debt, including an action to foreclose the mortgage, without leave of the court in which the former action was brought.

26

N.Y. Real Prop. Acts. Law § 1301(3) (McKinney).  The One Action Rule's

purpose "is to avoid multiple suits to recover the same mortgage debt."  *U.S.*

*Bank Nat'l Ass'n* v. *Mattone*, 769 F. Supp. 3d 298, 317 (S.D.N.Y. 2025) (internal

quotation marks omitted) (quoting *Windward Bora LLC* v. *Browne*, No. 20 Civ.

4748 (BCM), 2023 WL 2744684, at *13 (S.D.N.Y. Mar. 31, 2023)).

The problem with Defendants' argument is that New York's One Action

Rule does not apply if the property is located outside of New York.  *See Wells*

*Fargo Bank, Nat'l Ass'n* v. *Kokolis*, No. 12 Civ. 2433 (DLI) (JO), 2013 WL

789448, at *4 (E.D.N.Y. Mar. 1, 2013) ("It is 'well settled' that an action on a

guaranty is not barred by the RPAPL due a pending foreclosure action in

another state, where the property is not located in New York." (quoting *SPCP*

*Grp., LLC* v. *Russell*, No. 08 Civ. 11320 (DAB), 2010 WL 3958641, at *3-4

(S.D.N.Y. Sept. 29, 2010))); *see also SPCP Grp., LLC*, 2010 WL 3958641, at *4

(collecting cases).  Here, the property is in Louisiana, so New York's One Action

Rule does not apply.

Defendants' argument to the contrary focuses on the choice-of-law

provisions in the Guaranties, which provisions specify that New York law

governs.  (*See* Springing Recourse Guaranty § 5.3(a); Completion Guaranty

§ 5.3(a)).  But Defendants cite no case law suggesting that the jurisdiction that

supplies the law overrides the location of the property for purposes of the One

Action Rule.

In support, Defendants cite *Wells Fargo Bank, N.A.* v. *Pena*, 24 N.Y.S.3d

865 (N.Y. Sup. Ct. Kings Cnty. 2016).  But in that case, which concerned a New

27

Jersey property, the New York trial court recognized that "RPAPL 1301(3) is not technically applicable." *Id.* at 871. The court stayed — but did not dismiss — the New York case, however, because the plaintiff sought money damages against the guarantor in the New Jersey foreclosure action, the same claim it was pursuing in New York. *Id.* at 871-72, 875. It did not actually apply the One Action Rule. Here, Plaintiff is suing the Guarantor only in New York, not Louisiana. Therefore, even following *Pena*, the Court would not stay — much less dismiss — this action because of New York's One Action Rule.[4]

While the Court agrees with Plaintiff that the One Action Rule does not bar Plaintiff's claims here, the Court notes that it is less persuaded by Plaintiff's argument that Defendants, through the Guaranties, waived their ability to invoke the One Action Rule in defense. (Pl. Opp. 6). Plaintiff does not cite to or discuss the waiver language in its brief, nor does Plaintiff explain how such language meets the standard required to find waiver in New York. (*See id.* (citing the Springing Recourse Guaranty generally but not mentioning any specific language)).

Specifically, New York requires that waivers of statutory rights be "clear and unambiguous." *159 MP Corp.* v. *Redbridge Bedford, LLC*, 33 N.Y.3d 353, 363 (2019); *see also Civ Serv. Emps. Ass'n, Inc.* v. *Newman*, 450 N.Y.S.2d 901, 903 (3d Dep't 1982) (noting that a union's waiver of its right to negotiate "must be clear, unmistakable and without ambiguity"), *aff'd*, 61 N.Y.2d 1001 (1984);

---

4   As explained *infra*, the Court ultimately determines to stay the case under *Colorado River*, thereby awarding the same relief that the *Pena* court provided.

*cf. Fundamental Portfolio Advisors, Inc.* v. *Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006) ("Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned[.]").  Plaintiff makes no argument that Defendants' waiver satisfies this standard.

Furthermore, even otherwise valid waivers may be "outweigh[ed]" by certain "public policy interests."  *159 MP Corp.*, 33 N.Y.3d at 361-63; *see also Deutsche Bank Nat'l Trust Co.* v. *Flagstar Cap. Mkts.*, 32 N.Y.3d 139, 151 (2019) ("[A] party cannot, in advance, make a valid promise that a statute founded in public policy shall be inoperative[.]" (internal quotation marks omitted and alteration adopted) (quoting *John J. Kassner & Co.* v. *City of New York*, 46 N.Y.2d 544, 551 (1979))).  Indeed, some New York courts have ruled that the One Action Rule cannot be waived, as allowing such a waiver "would be antithetical to the purpose and policy reflected in RPAPL 1301(1)."  *Golden Res., LLC* v. *Seddio*, Index No. 514634/20, 2022 WL 2101614, at *3 (N.Y. Sup. Ct. Kings Cnty. June 10, 2022); *see also Orchard Hotel, LLC* v. *Zhavian*, 950 N.Y.S.2d 492 (Table), 2012 WL 319046, at *13 (N.Y. Sup. Ct. Kings Cnty. 2012) (explaining that enforcing a waiver of the One Action Rule "would contravene the legislative purpose and the policy reflected in RPAPL 1301").

The Court is skeptical of Plaintiff's argument regarding waiver, but it need not decide the issue here.  Instead, it agrees with Plaintiff's other argument: that the One Action Rule does not apply to property located outside of New York, like the Property here.  Accordingly, the Court declines to dismiss the Complaint under Rule 12(b)(6) because of New York's One Action Rule.

29

### C.     The Court Stays the Case

The Court now turns to the proper disposition of the instant case. "When a Court chooses to abstain pursuant to *Colorado River*, it may elect to stay actions for damages or dismiss actions 'seeking equitable or otherwise discretionary relief.'" *Phillips*, 252 F. Supp. 3d at 303 (quoting *Cadle Co.* v. *Bankers Fed. Savs. FSB*, 929 F. Supp. 636, 639 (E.D.N.Y. 1996)); *see also Quackenbush*, 517 U.S. at 730 ("In those cases in which we have applied traditional abstention principles to damages actions, we have only permitted a federal court to 'withhold action until the state proceedings have concluded'; that is, we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether[.]" (citation omitted) (quoting *Growe* v. *Emison*, 507 U.S. 25, 32 (1993))); *accord 767 Third Ave. Assocs.*, 218 F.3d at 163. "Because [Plaintiff] is seeking damages and not equitable relief, this case will be stayed pending the resolution of the proceedings in the [Louisiana] state court." *Tuebor Reit Sub LLC*, 2020 WL 4897137, at *7.

## CONCLUSION

For the above reasons, Defendants' motion to stay the case under the *Colorado River* abstention doctrine is GRANTED.  Defendants' motion to stay the case under the Court's inherent powers is DENIED as moot.  Finally, Defendants' motion to dismiss the case under Rule 12(b)(6) due to New York's One Action Rule is DENIED.

The Clerk of Court is directed to STAY the matter pending further order of this Court.  The parties shall file a status update with the Court on or before **July 14, 2026**, or within one week of any significant development in the Louisiana Action.

The Clerk of Court is directed to terminate the pending motion at docket entry 17.

SO ORDERED.

Dated:      June 8, 2026
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge

31